## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-60689-RUIZ/STRAUSS

**MICHELLE J. LEE,**

  Plaintiff,

v.

**GEO SECURE SERVICES, LLC,**

  Defendant.

_____ /

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon GEO Secure Services, LLC's ("Defendant's") Motion to Dismiss Plaintiff's Amended Complaint ("the Motion") [DE 32]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 38]. I have reviewed the Motion, the Response [DE 33] and Reply [DE 35] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED-IN-PART and DENIED-IN-PART** and that Counts II and IV of Plaintiff's Amended Complaint be **DISMISSED**.

### I.   BACKGROUND

Plaintiff, a Black female in her 50s, was employed by Defendant from October 27, 1998, to March 14, 2019. [DE 14 at ¶1, 3]. Defendant provides correctional and detention management services, *inter alia*, to government agencies. *Id.* at ¶ 1. Plaintiff has been certified as a correctional officer in the State of Florida since 1995. *Id.* at ¶ 10. As recently as January 29, 2019, Plaintiff obtained a favorable performance evaluation from Defendant. *Id.* at ¶¶ 10, 14. Additionally, on

February 4, 2019, Plaintiff received the "Caught Doing It Right" award from one of the wardens at Defendant's correctional facilities.  *Id.* at ¶ 15.

On February 5, 2019, Plaintiff and Detention Officer S. Austin ("Officer Austin") were assigned to Larkin Community Hospital to observe a detainee of the United States Immigration & Custom Enforcement ("ICE").  *Id.* at ¶¶ 12, 16.  ICE's detainee, D.G., was a high-level criminal detainee who was undergoing psychiatric care at the hospital.  *Id.* at ¶ 16.  During this shift, Plaintiff was the recording officer in charge of taking notes regarding D.G.'s status and reporting her and Officer Austin's observations to her supervisors in the control center at the Broward Transitional Center ("BTC")[1] every hour.  *Id.* at ¶ 17.  Although Plaintiff and Officer Austin were initially positioned inside of D.G.'s hospital room, they re-positioned themselves outside after Plaintiff reported to her supervisors that D.G. was "acting belligerent" and threatening to assault Plaintiff and Officer Austin.  *Id.* at ¶ 20.  Once outside of D.G.'s room, Plaintiff was positioned facing away from the room and Officer Austin was positioned facing the room.  *Id.* at ¶ 23.  At some point during the shift (when Plaintiff and Officer Austin were positioned outside of D.G.'s room), D.G. escaped the hospital room and assaulted a member of the hospital's janitorial staff.  *Id.* at ¶ 24.  Plaintiff reported the incident to the BTC control center minutes after it happened.  *Id.* at ¶ 25.

On February 7, ICE placed Plaintiff and Officer Austin on "no detainee contact."  *Id.* at ¶ 26.  A day later, on February 8, Plaintiff and Officer Austin were suspended for violating Defendant's and BTC's policies and procedures.  *Id.* at ¶ 27.  Defendant terminated Plaintiff on March 14, 2019.  *Id.* at ¶¶ 2, 28.

---

[1] ICE houses other detainees at the BTC, which is located in Pompano Beach, Florida.  [DE 14 at ¶ 12].  Defendant operates the BTC and provides correctional services for ICE.  *Id.*

Shortly before her termination, on March 2, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged race and age discrimination and retaliation.  [DE 14 at ¶ 7; DE 32-1 at 2].  The particulars of her charge are as follows:

> I am a Black Female. I was employed with the above-named employer until March 2019. Throughout my employment, I have never had any attendance, discipline, or performance issues. On Feb 4, 2019, I received an award card from the Warden for excellence on the job. I was treated less favorably in comparison to my non-black counterparts when Officer Jacome (White-male) was caught sleeping on the job by the Warden. Another co-worker Officer K Herrera (Hispanic) had a physical encounter with a detainee where she used force and was never suspended and remain employed. Also, individuals are significantly younger than me. On Feb 8, 2019, I was placed on leave without pay, for addressing a detainee behavior when he was attacking another employee at the facilities. Subsequently, on March 26, 2019, I received a letter that I was terminated. I believe I was retaliated for engaging in a protected activity, when the employee that suffered the attacks filed a lawsuit against the Geo Group. Other similarly situated employees have engaged and provide responses to detainees' threats and still employed.
>
> No reason was given for my termination. The Respondent has a video that can prove my actions were justified according to R policy. Also, I have witnesses.
>
> I believe that I have been discriminated against due to my race (black), and retaliated against for participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been discriminated against due to my age (60), in violation of the Age Discrimination in Employment Act of 1967, amended.

[DE 32-1].

The EEOC issued Plaintiff a Dismissal and Notice of Suit Rights letter on January 12, 2022.  [DE 14 at ¶ 8; DE 32-2].  Plaintiff filed this action on April 8, 2022 and amended her complaint on May 15, 2022.  [DE 1; DE 14].  In Plaintiff's Amended Complaint, she alleges that she was terminated in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981 ("Section 1981").  [DE 14].  Specifically, Plaintiff alleges that she was discriminated against because of her race (Count I –

Title VII; Count V – Section 1981) and age (Count III – ADEA) and was subjected to policies and procedures that disproportionally impacted those of her race (Count II – Title VII) and age (Count IV - ADEA). *Id.* Defendant filed the instant motion to dismiss on July 1, 2022. [DE 32].

## II.   <u>LEGAL STANDARD</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also*

*Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## III.   <u>ANALYSIS</u>

### A.  **Whether the Amended Complaint is a Shotgun Pleading**

Defendant argues that the Amended Complaint should be dismissed in its entirety because it is a shotgun pleading.  "Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (same).  These types of pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  In addition to making it harder for defendants and the court to interpret a plaintiff's complaint, shotgun pleadings violate Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement" detailing entitlement to relief, and Rule 10(b), which states that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (stating that shotgun pleadings "violate either Rule 8(a)(2) or Rule 10(b), or both").

The Amended Complaint does not constitute a "shotgun pleading."  According to Defendant, the Amended Complaint is a shotgun pleading because Plaintiff incorporates thirty-three (33) paragraphs of factual allegations into each of the four counts in the Amended Complaint. However, nineteen (19) of the thirty-three paragraphs that Plaintiff incorporated into each count "comprise the facts making up the thrust of the Complaint." *Jones v. Fla. Power & Light Co.*, 09-22683, 2010 WL 1740713, at *2 (S.D. Fla. Apr. 29, 2010).  Many of Plaintiff's theories, such as

her disparate treatment and retaliation theories, are founded on the same facts.  Thus, "[t]he fact that each Count incorporates the general factual allegations is appropriate and unsurprising given the fact that [most of] the theories alleged are similar in nature."  *Id.*  Other than the thirty-three paragraphs that are incorporated into each count, no other paragraphs are incorporated into any other count.  More importantly, each count also contains additional paragraphs that are specific to that count.  Therefore, I find that the Amended Complaint is not a shotgun pleading and should not be dismissed on those grounds.

## B.  Disparate Impact Claims

### 1.  Whether Plaintiff Exhausted her Administrative Remedies

Before pursuing employment discrimination claims under Title VII and the ADEA, an employee must exhaust administrative remedies.  *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004).  "The administrative process is initiated by timely filing a charge of discrimination [with the EEOC]."  *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002).  "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'"  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  "In light of the purpose of the EEOC exhaustion requirement, [the Eleventh Circuit has] held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Gregory*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation and citation omitted).  Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]."  *Id.* (quoting *Sanchez v.*

*Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970)).   Thus, the Eleventh Circuit has

stated that "the scope of an EEOC complaint should not be strictly interpreted."   *Gregory*, 355

F.3d at 1280 (quoting *Sanchez*, 431 F.2d at 465).   Although EEOC complaints are liberally

construed, "a plaintiff is precluded from raising allegations in a civil action unless they are

reasonably related to the underlying charges raised before the EEOC."   *Price v. M & H Valve Co.*,

177 F. App'x 1, *14 (11th Cir. 2006).   In other words, a plaintiff may raise claims in a civil action

if they "'amplify, clarify, or more clearly focus' the allegations in the EEOC charge" and may not

raise claims if they allege new acts of discrimination.   *Id.*   (quoting *Gregory*, 355 F.3d at 1279).

Here, Defendant argues that Plaintiff failed to exhaust her administrative remedies

regarding her disparate impact claims.[2]   Defendant avers that although Plaintiff's EEOC charge

includes facts to support her disparate treatment claims, it does not include facts to support her

disparate impact claims.   I agree.

To evaluate Defendant's argument, it is necessary to detail the differences between

disparate treatment and disparate impact claims.   "Disparate-treatment cases present the most

easily understood type of discrimination and occur where an employer has treated a particular

person less favorably than others because of a protected trait."   *Ricci v. DeStefano*, 557 U.S. 557,

577 (2009) (cleaned up).   In disparate treatment cases, plaintiffs must prove a discriminatory

---

[2] It is unclear whether a defense based on the failure to exhaust administrative remedies is
appropriately raised in a motion under Federal Rule of Civil Procedure 12(b)(6), as Defendant has
done here. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) (considering the issue under
Rule 12(b)(1)); *Kluttz v. WORLDPAC*, 4:12-CV-2009, 2013 WL 6731880, at *2 (S.D. Tex. Dec.
19, 2013) (same). *Cf. Murray*, 2019 U.S. Dist. LEXIS 28578 at *2 n.1 (S.D. Fla. Feb. 21, 2019)
(determining that an exhaustion defense could be raised in a Rule 12(b)(6) motion).   In opposing
Defendant's argument, Plaintiff argues that she has exhausted her administrative remedies.
However, she does not argue that Defendant used the wrong mechanism to raise the issue.
Therefore, I assume, without deciding, that Defendant's failure to exhaust defense can be
considered on motion under Rule 12(b)(6).

motive. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). "In contrast, disparate impact theory prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000). Plaintiffs alleging disparate impact discrimination do not need to prove discriminatory motive. *Teamsters*, 431 U.S. at 335 n.15. Rather they must allege that "application of a specific or particular employment practice" has caused a disparate impact. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656-57 (1989). Thus, while the disparate treatment theory is aimed at acts of intentional discrimination, the disparate impact theory is aimed at acts of unintentional discrimination. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d at 1270.

In *Pacheco v. Mineta*, the Fifth Circuit Court of Appeals faced the same question this Court is faced with – "whether a disparate-impact claim was exhausted by the plaintiff's administrative charge" – and applied the same test based on the same precedent underlying the Eleventh Circuit's decision in *Gregory* – whether the alleged Title VII claim "can reasonably be expected to grow out of" the administrative charge. 448 F.3d 783, 789 (5th Cir. 2006) (citing *Sanchez*, 431 F.2d at 466). In *Pacheco*, the plaintiff alleged in his EEOC Charge of Discrimination that he was "passed over for a promotion in favor of a 'good old boy'" even though he was more qualified. 448 F.3d at 791. The plaintiff later brought a lawsuit in the District Court for the Western District of Texas alleging claims of disparate impact and disparate treatment. *Id.* at 787. Although the district court found that the plaintiff's complaint and EEOC Charge supported claims for intentional discrimination, it stated that the plaintiff did "not even suggest claims under a disparate impact theory." *Id.* at 791-92. Thus, the district court dismissed the plaintiff's disparate impact claim pursuant to 12(b)(1) based on the plaintiff's failure to exhaust administrative remedies. *Id.* at 787.

On appeal, the Fifth Circuit Court of Appeals affirmed, finding that the plaintiff's disparate impact claim "could not reasonably expected to grow out of" his administrative charge due to a combination of factors: (1) the administrative charge facially alleged disparate treatment; (2) it failed to identify a neutral employment policy; and (3) it complained of past incidents of disparate treatment only. *Id.* at 792.  In particular, the court identified the plaintiff's failure to allege a neutral employment policy as the primary deficiency in his EEOC Charge.  *Id.*  According to the Fifth Circuit, "[a] neutral employment policy is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justifications for the policy." *Id.*; *see also E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d at 1278 (noting that a facially neutral employment practice is the key to a discriminatory impact claim).

Several other courts have similarly concluded that a plaintiff failed to exhaust administrative remedies as to a disparate impact claim where their EEOC complaint alleged only disparate treatment and failed to identify a facially neutral policy allegedly causing a disparate impact. *See*, *e.g.*, *Price*, 177 F. App'x at *14 (dismissing a disparate impact claim for failure to exhaust administrative remedies where EEOC charge failed to allege facially-neutral policy); *Mensah v. Baxalta US Inc.*, 118CV05013CAPLTW, 2020 WL 1452988, at *3 (N.D. Ga. Feb. 19, 2020) ("Because the EEOC charge alleges only intentional discrimination, and makes no mention of a facially non-discriminatory employment practice that disproportionately impacts African Americans, the plaintiff is barred from asserting a disparate impact claim now."); *Murray v. Bombardier*, 2019 U.S. Dist. LEXIS 28578 at *5 (S.D. Fla. Feb. 21, 2019); *Camara v. Epps Air Serv., Inc.*, 292 F. Supp. 3d 1314, 1337-38 (N.D. Ga. 2017) (collecting cases).

I find that Plaintiff failed to exhaust her administrative remedies with respect to her disparate impact claims. Even liberally construing the scope of her EEOC Charge of Discrimination, the disparate impact claim she now alleges could not reasonably be expected to grow out of the charge of discrimination. As in *Pacheco*, Plaintiff's EEOC charge facially alleges disparate treatment and the only past incident described is one of disparate treatment. The only factual allegations are that Plaintiff was treated less favorably than two younger, non-black counterparts who were neither suspended nor fired despite falling asleep on the job (for one of them) or having a physical altercation with a detainee. [DE 32-1 at 2]. Plaintiff alleges that she was placed on leave, and ultimately terminated, "for addressing a detainee behavior when he was attacking another employee at the facilities" whereas "[o]ther similarly situated employees have engaged and provided responses to detainees' threats and [are] still employed." *Id.* In other words, Plaintiff's EEOC charge alleges that similarly situated employees engaged in similar conduct or misconduct but were treated differently. That is paradigmatically a claim of disparate treatment.

More significantly, like the plaintiff in *Pacheco* and other cases cited above, Plaintiff's EEOC charge failed to cite any facially-neutral employment policy or suggest that application of such policy caused a disparate impact. In Plaintiff's EEOC Charge of Discrimination, her only mention of a policy is her allegation that Defendant has "a video that can prove my actions were justified according to R policy." [DE 32-1 at 2]. Plaintiff does not describe what "R policy" is, whether it is facially neutral, or whether it led to the discrimination she alleges. But more importantly, this lone mention of a policy asserts that Plaintiff has evidence that her actions were in accordance with "R policy." In other words, the clear implication is not that <u>applying</u> "R policy" unintentionally led to a discriminatory disparate impact but rather that Defendant <u>misapplied</u> "R policy" to Plaintiff's conduct. Again, this is paradigmatically a claim of disparate treatment, not

disparate impact.  Nor is it reasonable to believe that an EEOC investigator investigating these alleged facts would be led to a facially-neutral policy causing a disparate impact.  *See Butler v. Matsushita Commc'n Indus. Corp. of U.S.*, 203 F.R.D. 575, 582 (N.D. Ga. 2001) ("[i]t is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination.")

Despite these deficiencies, in response to Defendant's motion, Plaintiff claims that she exhausted her administrative remedies with respect to her disparate impact claim because she generally alleged discrimination based on race and age and because "although the only discriminatory act specifically named in the Charge of Discrimination is Lee's termination, she did not claim that this was the only act that occurred."  [DE 33 at 3].  Thus, Plaintiff argues that the EEOC investigation "would have reasonably encompassed all possible discriminatory actions that occurred leading to her termination."  *Id.*  Yet, Plaintiff's EEOC charge alleges that the earliest discrimination occurred in February 2019 – corresponding to the date of the alleged incident with "D.G." one month before Plaintiff's termination – and it does not even allude to other affected employees.  Therefore, it is not reasonable to believe than an EEOC investigator would have sufficient notice of earlier or broader (completely unspecified) discriminatory acts, much less notice prompting the investigator to look for a policy affecting a larger range of employees.[3]

---

[3] In this sense, Plaintiff's case is quite distinguishable from *Gregory* and *Batson v. Salvation Army*, 897 F.3d 1320 (11th Cir. 2018).  In *Batson*, the Eleventh Circuit found that the allegations in plaintiff's EEOC charge of her employer's failure to accommodate a disability were "related to" her later lawsuit claim of retaliation because the retaliation claim grew out of the request to accommodate that formed the basis of her EEOC charge (albeit on a different theory).  897 F.3d at 1328.  Thus, an investigation of the facts of the failure to accommodate claim would "at least in some fashion" have uncovered the facts of the retaliation claim.  *Id.*  Similarly, in *Gregory*, the plaintiff's EEOC charge complained that she was terminated because of her race and sex, but her lawsuit included a claim that she was terminated in retaliation for complaining of prior discriminatory treatment.  355 F.3d 1277.  Because investigation into the motivation for her termination would likely have uncovered evidence of retaliation as much as direct discrimination,

Therefore, I find that the disparate impact counts of Plaintiff's Amended Complaint (Counts II and IV) must be dismissed because Plaintiff failed to exhaust her administrative remedies with respect to those claims.

### 2. Whether Plaintiff Alleges Sufficient Facts to State a Disparate Impact Claim

In addition to Plaintiff's failure to exhaust administrative remedies with respect to her disparate impact claims under Title VII and the ADEA, I find that her Amended Complaint fails to allege sufficient facts to plausibly state a disparate impact claim. To establish a prima facie case of disparate impact discrimination, a plaintiff must show that there is a significant statistical disparity between employees belonging to the protected class and other employees, that there is a facially-neutral employment practice that allegedly causes the disparity, and that a causal nexus exists between the employment practice identified and the statistical disparity shown. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d at 1274; *see Price*, 177 F. App'x at *14. At the pleadings stage, a plaintiff need not establish a prima facie case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 999 (2002). However, the complaint must still "set out enough factual content to allow a court to draw the reasonable inference" that the defendant is liable for the alleged discrimination. *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1023 (11th Cir. 2016). Thus, although Plaintiff need not allege specific facts establishing a prima facie case, the elements of a prima facie case provide useful guidance for whether Plaintiff has alleged a plausible claim. *Woods v. Lockheed Martin Corp*, 2020 WL 11884822, at *5 (N.D. Ga. 2020).

---

the allegations in the EEOC charge were "reasonably related" to the retaliation charge. *Id*. at 1280. Here, there is no reason to believe that investigation of the narrow facts in Plaintiff's EEOC charge would have led to analysis of facially-neutral policies having a disparate impact.

Plaintiff's Amended Complaint, unlike her EEOC Charge of Discrimination, lists three facially-neutral policies: Section II-4 of the October 1, 2003, Security Post Order (Title No. 9—Off-Site Hospital), BTC Policy 3-15, and GEO Standards of Employee Conduct 3.2.2.  [DE 14 at ¶¶ 18, 27, 46].   These policies require that officers maintain constant, direct supervision over detainees.  *Id.*  Plaintiff vaguely asserts that these policies "disproportionately affected" and have had a "significant discriminatory effect" on Black Detention Officers and Detention Officers over the age of forty (40).   [DE 14 at ¶¶ 46, 49, 65, 68].   However, these phrases amount to bare conclusions.  *See Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (stating that the words "disproportionate" and "impermissible impact" were "bare legal conclusions, not facts").   And bare assertions that a policy has had a systemic effect, without alleging some statistical disparity or other factual allegations that would demonstrate such disparity, are insufficient to state a plausible claim.  *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 497-98 (11th Cir. 2015); *Pouyeh v. Bascom Palmer Eye Institute*, 613 F. App'x 802, 811 (11th Cir. 2015).   Other than these conclusory assertions, Plaintiff offers no evidence of a significant statistical disparity between the at-issue protected groups and others outside of those protected groups to support her assertions.   Plaintiff is correct that she does not need to present "detailed statistics" at the pleading stage as there has been no discovery that would uncover this detailed evidence.  *See Bartholomew*, 219CV695FTM38MRM, 2020 WL 321372, at *4 (M.D. Fla. Jan. 21, 2020); *Pritchard v. Fla. High Sch. Athletic Ass'n*, No. 2:19-cv-94-GTM-29MRM, 2019 WL 1993511, at *5 (M.D. Fla. May 6, 2019).   But Plaintiff must allege "some statistical disparity, however elementary."  *Bartholomew*, 219CV695FTM38MRM, 2020 WL 321372, at *4; *see also Adams*, 742 F.3d at 733 (noting that "basic" statistical allegations will suffice at the pleading stage); *Muldrow v. Garland*, 8:21-CV-2674-KKM-JSS, 2022 WL 3716850, at *4 (M.D. Fla. Aug.

29, 2022) ("To successfully allege disparate impact, [plaintiff] must allege facts that would make it plausible that a statistically significant disparity exists.").  Plaintiff fails to allege even this elementary statistical disparity or provide any qualitative description of how the alleged disparate impact manifests itself.

Assuming arguendo Plaintiff's vague assertion that there has been a "significant discriminatory effect" provides this elementary showing of a statistical disparity, Plaintiff does not plausibly allege a causal relationship between the challenged practice and the statistical disparity. *See In re Employment Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1321 (11th Cir. 1999) (stating that plaintiffs alleging disparate impact claims must show "that the challenged practice (and not something else) actually causes the discriminatory impact at issue").  Plaintiff makes no attempt to explain why requiring employees to follow a policy directing them to maintain constant supervision of detainees would plausibly affect older or black employees differently than others nor allege any facts from which the Court could plausibly infer such cause.

More importantly, as discussed in the preceding section regarding Plaintiff's EEOC charge allegations, a closer look at Plaintiff's Amended Complaint reveals that she is not alleging a disparate impact of a facially-neutral policy; rather she is alleging inconsistent, discriminatory decisions against employees who have violated that policy.  For example, in paragraph 48, within Count II, Plaintiff alleges that Defendant's "management have elected not to impose significant disciplinary actions for non-Black Detention Officers who violate" the policies Plaintiff has identified.  [DE 14 at ¶ 48] (emphasis added).  The Amended Complaint goes on to specify that Defendant "provided more favorable treatment to non-Black Detention Officers who were involved in detainee-involved incidents while positioned in the same or similar manner as [Plaintiff] was on February 5, 2019."  *Id*. at ¶ 48(a) (emphasis added).  Analogous allegations

14

appear in Count IV, substituting "under the age of 40" for "non-Black." *Id.* at ¶ 67. These allegations – claiming that Defendant is treating employees in non-protected groups differently for committing similar violations of policy – allege a quintessential disparate treatment claim rather than a disparate impact claim. *See Jennings v. City of Tuscaloosa*, 7:13-CV-00874-LSC, 2013 WL 5299304, at *3 (N.D. Ala. Sept. 19, 2013) ("Insofar as Jennings argues that the policy is unfairly enforced, this provides support for his disparate treatment claim discussed below and not his disparate impact claim."); *see also Catastrophe Mgmt. Sols.*, 852 F.3d at 1024 (noting that the theories of disparate impact and disparate treatment "are not interchangeable, and courts must be careful to distinguish between them"). Accordingly, I recommend that counts II and IV of Plaintiff's Amended Complaint be dismissed.

## C. Disparate Treatment Claims

To make a prima facie case of disparate treatment under Title VII, the ADEA, and Section 1981, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Again, while a plaintiff need not establish a prima facie case to survive a motion to dismiss, she must plead enough facts (when taken as true) to suggest intentional race discrimination. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

Here, Defendant argues that Plaintiff's claims should be dismissed because she has not sufficiently alleged facts to satisfy the second and fourth elements of the prima facie test.[4]

### 1. Allegations of Qualification

Regarding the second element, Defendant argues that Plaintiff has not alleged that she was qualified for her position.   However, Eleventh Circuit "caselaw quite clearly instructs that plaintiffs, who have been discharged from a previously held position, do not need to satisfy the *McDonnell Douglas* prong 'requiring proof of qualification.'"   *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 830 n. 3 (11th Cir. 1988)).   In discharge or demotion cases, as opposed to failure to promote or hire cases, "where a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to satisfy the test of a prima facie case can be inferred." *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983).

Plaintiff has alleged sufficient facts to infer her qualification.   In the Amended Complaint, Plaintiff alleged that at the time of her firing she had been a certified correctional officer in the State of Florida for twenty-four (24) years and had been working for Defendant for over twenty (20) years.   [DE 14 at ¶¶ 10, 11, 28].   She alleged that she had "not [been] involved in any

---

[4] Both Defendant's Motion and Plaintiff's Response seem to assume that Plaintiff must establish a prima facie case, even though "[t]he prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement."   *Swierkiewicz*, 534 U.S. at 510; *Gomez v. City of Doral*, 2022 WL 19201 at *2 (11th Cir. Jan. 3, 2022).   Again, Plaintiff's complaint need only provide enough factual material (taken as true) to raise a reasonable inference, and thus plausibly suggest, that she suffered an adverse employment action due to intentional racial (or age) discrimination.   *Surtain*, 789 F.3d at 1246.   Nevertheless, Plaintiff's Amended Complaint does not provide any non-conclusory allegations from which the Court could reasonably infer that her termination was the product of discrimination other than her use of comparators to suggest disparate treatment.   In other words, the Amended Complaint does not suggest any plausible claim for relief that would not rely on the *McDonnell Douglas* framework, and I therefore (consistent with the parties' arguments) consider whether Plaintiff has sufficiently alleged facts to infer that she has a plausible claim under that framework.

disciplinary actions or received any employee adverse actions" from her hire date in 1998 until February 2019. *Id*. at ¶ 11. Plaintiff also alleged that she obtained a favorable evaluation from Defendant in January 2019 and received an award on February 4, 2019, which was the day before the incident that allegedly led to her termination and approximately six weeks before she was terminated. *Id*. at ¶¶ 14-15. The allegations of Plaintiff's long tenure and good standing in her position with Defendant are sufficient to create an inference that she was qualified for the position. *See Damon*, 196 F.3d at 1360 (inferring a plaintiff's qualifications from thirteen years of experience); *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1299 (11th Cir. 2015) (inferring a plaintiff's qualifications from, *inter alia*, nine years of experience in the same position); *Johnson v. Bennett Auto Supply, Inc.*, 319 F. Supp. 3d 1278, 1285 (S.D. Fla. 2018) (finding that plaintiff was qualified under the ADEA because he held the position for three to four years without incident).

Despite the allegations regarding Plaintiff's experience, Defendant's reply argues that Plaintiff failed to allege sufficient facts to show she was qualified for the "off-site hospital position she held at the time of her termination," citing solely to *Liebman* for support. In *Liebman*, the Eleventh Circuit, applying the principle that a court may infer from a plaintiff's long tenure in a position that he or she is qualified for that position, found that even though the plaintiff had only held a Managing Sales Director position for three years before he was fired, there was still enough evidence to support an inference that he was qualified for the job because he served in the "substantially similar" Managing Director position for the preceding six years and had worked for the company for a total of twenty-seven years. *Liebman*, 808 F.3d at 1299. By contrast, Defendant argues, Plaintiff has failed to show that the off-site hospital post position she was fired from was "substantially similar" to the positions she performed during her previous years of employment.

Defendant's reliance on *Liebman* is misplaced for several reasons.  First, *Liebman* was decided at the summary judgment stage.  Contrastingly, this case is only at the pleading stage where a plaintiff need only state a claim for relief that is plausible. *See Twombly*, 550 U.S. at 555; *Morrison v. City of Cumberland*, DLB-21-1987, 2022 WL 1663747, at *5 (D. Md. May 25, 2022) ("Even though Morrison's allegations that he was qualified for his position are quite limited, the Court finds he has narrowly met the threshold for plausibly alleging this element."); *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 65-66 (D.D.C. 2019) (stating that although it was a "close call" the plaintiff pled allegations adequate to create an inference that she was qualified). At this stage, the Court cannot determine whether Plaintiff's off-site hospital post was materially different from the positions that she had held over the preceding twenty years (or at least the position she held days before when she received a positive performance evaluation).  But taking the allegations in the Amended Complaint as true and in the light most favorable to Plaintiff, the allegations are sufficient to show she was qualified.  Moreover, the *Liebman* court (in addition to citing plaintiff's long tenure in his position) further noted the plaintiff's leadership awards and recent good performance as evidence that he was qualified for his position.  808 F.3d at 1299. Here, Defendant ignores Plaintiff's allegations regarding her positive January 2019 performance review and the award she received on February 4, 2019.  *See* [DE 14 at ¶¶ 14-15].  As in *Liebman*, these facts on top of Plaintiff's tenure are sufficient, taken in the light most favorable to Plaintiff, to infer that she was qualified for her position.  Accordingly, I find that Plaintiff has plausibly alleged that she was qualified for the detention officer position.

### 2. Alleged comparators

Regarding the fourth element, Defendant argues that Plaintiff's allegations fail to identify sufficiently similar comparators.  Valid comparators must be "similarly situated in all material

respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1229 (11th Cir. 2019). "Although this is a case-specific inquiry, a similarly situated comparator ordinarily will have: (1) engaged in the same basic conduct or misconduct; (2) been subject to the same employment policy, guideline, or rule; (3) had the same supervisor; and (4) shared a similar employment or disciplinary history." *Blash v. City of Hawkinsville*, 856 F. App'x 259, 264 (11th Cir. 2021) (citing *Lewis*, 918 F.3d at 1227-28). However, a plaintiff does not need to establish "an exact comparator" at the pleading stage. *Hargett v. Fla. Atl. Univ. Bd. of Trs.*, 9:15-CV-80349-CIV, 2015 WL 13639189, at *2 n.1 (S.D. Fla. Dec. 15, 2015). To survive a motion to dismiss a plaintiff need only plead enough facts, taken as true, to suggest intentional discrimination. *Surtain*, 789 F.3d at 1246. Thus, a plaintiff must plead enough facts to support the existence of a valid comparator. *Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 F. App'x 704, 710 (11th Cir. 2013).

Although a close call, I find that Plaintiff's allegations regarding one of Plaintiff's identified comparators are sufficient to withstand Defendant's motion to dismiss. Plaintiff's Amended Complaint specifically identifies two alleged comparators: Detention Officer Jacome and Detention Officer Herrera. According to Plaintiff, Detention Officer Jacome is a thirty-nine (39) year old Hispanic male who violated Defendant's policy by sleeping during a shift but was not terminated for his actions. Plaintiff also alleges that Detention Officer Herrera is a twenty-eight (28) year old Hispanic female who violated Defendant's policy by applying verbal and physical force to a detainee but was not terminated for her actions. In addition to Detention Officer Jacome and Detention Officer Herrera, Plaintiff also alleges that there have been other (unspecified) incidents that occurred when a male detention officer was positioned outside of a female detainee's hospital room while a female officer was positioned in the room but that

"[Plaintiff] is unaware of Defendant terminating any non-black detention officers in those incidents."[5]

Based on the allegations in the Amended Complaint, it is clear that Detention Officer Herrera is not a valid comparator as she engaged in different misconduct than Plaintiff. Based on Plaintiff's allegations, Plaintiff was fired for failing to maintain observation and supervision of a detainee; Detention Officer Herrera, by contrast, allegedly "applied verbal and physical force" to the same detainee (D.G.). [DE 14 at ¶ 33]. These forms of conduct (or misconduct) are materially different as to render Detention Officer Herrera an unsuitable comparator, despite Plaintiff's characterization of Detention Officer Herrera's conduct as a "more serious violation[] of company policy" (a characterization which the Court need not accept as true). Additionally, I find that the unnamed officers in the mixed gender duty teams are not valid comparators. From the allegations in the Amended Complaint, these unnamed officers appear to have been in a materially different situation than Plaintiff. Whereas one of the unnamed officers in these mixed gender pairs was positioned inside of the detainee's room when the alleged "incidents"[6] occurred, both Plaintiff and Detention Officer Austin were positioned outside of the detainee's room when the incident that led to Plaintiff's termination occurred. Furthermore, all Plaintiff alleges with respect to these unnamed officers is that she "is not aware" of any of them being fired. In other words, Plaintiff has not sufficiently alleged whether any of the unnamed officers were treated differently from her.

However, I find that, at least at this stage of the case, Plaintiff has pled enough facts to infer that Detention Officer Jacome is a valid comparator. Taking the allegations in the Amended

---

[5] Plaintiff also refers to these male and female detention officer pairs as mixed gender duty teams. [DE 14 at ¶ 31].
[6] Plaintiff's general reference to "incidents" makes it challenging to infer whether those situations involved similar harms as the one involving Plaintiff.

Complaint in the light most favorable to Plaintiff, Detention Officer Jacome satisfies three of the four criteria that similarly situated comparators will "ordinarily" meet. *See Lewis,* 918 F.3d at 1227. First (and most importantly), he appears to have engaged in similar alleged misconduct as Plaintiff — the failure to maintain proper supervision of a detainee. It is also plausible to infer that Plaintiff and Detention Officer Jacome were subject to the same employment policies, guidelines, and rules. *See Reid v. Wolf,* 1:20-CV-1235-CAP-JCF, 2021 WL 3073269, at *6 (N.D. Ga. Jan. 7, 2021) ("Plaintiff's allegations that [comparators] held the same position as him and worked in the same New York field office as him are enough to allow a reasonable inference that they were all subject to the same employment policies."), *report and recommendation adopted*, 1:20-CV-1235-CAP, 2021 WL 3073268 (N.D. Ga. Jan. 25, 2021). Further, although Plaintiff does not allege Detention Officer Jacome's employment history, given her allegations that she has suffered no adverse employment actions prior to the February 2019 incident, it is plausible to infer that Plaintiff's employment history was at least no worse than Detention Officer Jacome's.

Plaintiff fails to allege that she and Detention Officer Jacome shared the same supervisor. While she identifies BTC Warden Rice as the supervisor who at least initially suspended her [DE 14 at ¶ 26], she only generically refers to "the warden" observing Detention Officer Jacome sleeping at his officer's station. *Id.* at ¶ 32. Given that Detention Officer Jacome's incident occurred a year or two prior to Plaintiff's, it is unclear whether that "warden" was Warden Rice. Plaintiff's Response brief tacitly acknowledges that the supervisors were different, arguing only that "[Plaintiff] and the comparators shared <u>similar</u> supervisors or persons serving in <u>similar</u> roles or positions" and that "<u>a</u> GEO warden was involved in the discipline actions regarding [Plaintiff] and Jacome." [DE 33 at 7] (emphasis added). More importantly, the Amended Complaint lacks allegations identifying who ultimately decided to terminate Plaintiff and not terminate Detention

Officer Jacome; it refers only generically to "GEO" having taken these actions.  [DE 14 at ¶¶ 28, 32].  Since the ultimate question is whether the alleged disparate treatment between Plaintiff and Detention Officer Jacome was motivated by discriminatory intent, it is less important who directly supervised Plaintiff and Detention Officer Jacome and more important whether the same person or people made the decisions regarding how they would, or would not, be disciplined.  *See Morris v. Potter*, 251 F. App'x 667, 668-69 (11th Cir. 2007); *Reid v. Wolf*, 1:20-CV-1235-CAP-JCF, 2021 WL 3073269, at *6 n.4.  Without more detailed information about Defendant's decision-making process and the specific individuals involved in that process, the Court cannot determine the extent to which the treatment of Detention Officer Jacome sheds light on the motivation and reasoning behind the treatment of Plaintiff.

However, I find this deficiency does not disqualify Detention Officer Jacome from serving as a valid comparator and require dismissal, at least at this stage of the case.  While *Lewis* articulated the four criteria that valid comparators will "ordinarily" share with a plaintiff, it does not require that an alleged comparator strictly satisfy all four criteria, particularly at the pleadings stage.  Importantly, the Eleventh Circuit's use of the word "ordinarily" and its description of a "case-by-case" inquiry "in the context of individual circumstances" suggest that every factor need not be clearly met in each case.  *See* 918 F.3d at 1227.  This language also suggests that courts should not be too quick to declare an alleged comparator insufficiently similar, especially when the plaintiff has yet to have the opportunity to take discovery.  Crucially, *Lewis* was decided at the summary judgment stage, at which a plaintiff must more concretely establish their entitlement to relief.  *See Surtain*, 789 F.3d at 1246.  Again, at the pleadings stage, Plaintiff need only "plausibly allege" the existence of a valid comparator.  *Caraway*, 550 F. App'x at 710.  The more exacting analysis of Plaintiff's comparators urged by Defendant is more apropos at the summary judgment

stage, after discovery has been conducted. *See Parish-Carter v. Avossa*, 9:16-CV-81623, 2017 WL 2720966, at *3 (S.D. Fla. June 23, 2017) ("Although Defendants argue that the mere fact that Plaintiff's replacements were white and/or younger with less experience than Plaintiff does not necessarily mean that those individuals are outside of Plaintiff's protected classes (or similarly situated), that is a fact-based inquiry that is improper on a motion dismiss."). At this point, taking the allegations in the Amended Complaint as true and drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged the existence of a valid comparator (in Detention Officer Jacome) and thus has plausibly alleged a claim for discrimination using a disparate treatment theory.

      **3. Conclusion**

In summation, I find that Defendant's motion to dismiss should be denied as to counts I, III, and V because Plaintiff has alleged a plausible claim for race and age discrimination.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 32] be **GRANTED-IN-PART and DENIED-IN-PART** and that Counts II and IV of Plaintiff's Amended Complaint be **DISMISSED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 16th day of November 2022.

Jared M. Strauss
United States Magistrate Judge